IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA



| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| JOSEPH LEE LEVINSON | : | 1:15CR413-1 |
| AUBREY MANASSEH PRUITT | : | 1:15CR413-2 |
| DUSTIN GARRETT FISHER | : | 1:15CR413-3 |

The Grand Jury Charges:

COUNT ONE

1.  At all times material herein, JOSEPH LEE LEVINSON was a resident of Wake County, in the Eastern District of North Carolina. At all times material herein, JOSEPH LEE LEVINSON was an attorney at law and a licensed member of the North Carolina State Bar.

2.  At all times material herein, AUBREY MANASSEH PRUITT was a resident of Orange County, in the Middle District of North Carolina.

3.  At all times material herein, DUSTIN GARRETT FISHER was a resident of Durham County, in the Middle District of North Carolina.

4.  At all times material herein, Jotham Walker Pruitt was a resident of Durham County, in the Middle District of North Carolina.

5.  At all times material herein, SunTrust Bank, N.A., and all its branches were financial institutions, the deposits of

which were then insured by the Federal Deposit Insurance Corporation.

6. At all times material herein, Washington Mutual Bank, N.A., and all its branches were financial institutions within the meaning of Title 18, United States Code, Section 1956(c)(6), and Title 31, United States Code, Section 5312(a)(2), that is, a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation. In or about September, 2008, the Federal Deposit Insurance Corporation was appointed as receiver for Washington Mutual Bank, N.A.

7. At all times material herein, Long Beach Financial Corporation, doing business under the name Long Beach Mortgage Company, was a wholly owned subsidiary of Washington Mutual Bank, N.A., having been purchased by Washington Mutual Bank, N.A., in 1999.

8. At all times material herein, JP Morgan Chase Bank and all its branches were financial institutions within the meaning of Title 18, United States Code, Section 1956(c)(6), and Title 31, United States Code, Section 5312(a)(2), that is, a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation. JP Morgan Chase Bank is the successor in interest to Washington Mutual Bank, N.A.

9. At all times material herein, Countrywide Bank, N.A., and all its branches were financial institutions within the

2

meaning of Title 18, United States Code, Section 1956(c)(6), and Title 31, United States Code, Section 5312(a)(2), that is, a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

10. At all times material herein, Bank of America, N.A., and all its branches were financial institutions within the meaning of Title 18, United States Code, Section 1956(c)(6), and Title 31, United States Code, Section 5312(a)(2), that is, a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

11. From in or about December, 2005, continuing up to and including in or about December, 2010, the exact dates to the Grand Jurors unknown, AUBREY MANASSEH PRUITT, DUSTIN GARRETT FISHER, and Jotham Walker Pruitt operated a marijuana "grow" business in Orange County, North Carolina. As part of the "grow" operation, AUBREY MANASSEH PRUITT and DUSTIN GARRETT FISHER grew marijuana indoors in houses obtained for them by Jotham Walker Pruitt and JOSEPH LEE LEVINSON in the vicinity of the Town of Hillsborough, Orange County, North Carolina. The operation was funded and supported by several investors, including those whose initials are M.L. and J.J. JOSEPH LEE LEVINSON recruited M.L. and J.J. to invest in the "grow" operation. JOSEPH LEE LEVINSON received cash and drugs from the "grow" operation.

3

12. "Grow houses" for the operation were located at 6557 New Sharon Church Road, Rougemont, North Carolina, 3812 New Sharon Church Road, Hillsborough, North Carolina, 3818 New Sharon Church Road, Hillsborough, North Carolina, 2622 Miller Road, Hillsborough, North Carolina, 3417 Schley Road, Hillsborough, North Carolina, and 1414 Laurel Lane, Hillsborough, North Carolina, all in Orange County, in the Middle District of North Carolina.

13. Each of the above referenced "grow houses" was purchased for the operation by Jotham Walker Pruitt under the pretense that the houses were to be used for rental purposes. Jotham Walker Pruitt obtained mortgage funding to purchase each of the "grow houses" under the false pretense that he was obtaining mortgage financing to purchase a residence or investment rental property.

14. Funding for down payments on the "grow houses" was provided from the proceeds of earlier drug sales by AUBREY MANASSEH PRUITT.

15. JOSEPH LEE LEVINSON, AUBREY MANASSEH PRUITT, and DUSTIN GARRETT FISHER agreed with Jotham Walker Pruitt that Jotham Walker Pruitt would obtain mortgage financing for the "grow houses" located at 1414 Laurel Lane, 2622 Miller Road, and 6557 New Sharon Church Road, despite the fact that the houses would be used for illegal and improper purposes as part of an

4

illegal drug operation, and that such mortgage funding would be obtained through false pretenses, promises, and representations.

16. On or about December 20, 2005, Washington Mutual Bank, N.A., through its wholly owned subsidiary Long Beach Mortgage Corporation, provided mortgage financing for the purchase of the property located at 1414 Laurel Lane, Hillsborough, North Carolina, through two separate mortgage loans in the amounts of $315,200.00 and $78,500.00.

17. On or about March 14, 2006, SunTrust Bank, N.A., provided mortgage financing for the purchase of the property located at 6557 New Sharon Church Road, Rougemont, North Carolina, in the amount of $225,000.00.

18. On or about February 16, 2007, Countrywide Bank, N.A., provided the mortgage financing for the purchase of the property located at 2622 Miller Road, Hillsborough, North Carolina, in the amount of $330,547.00.

19. To obtain mortgage financing for purchase of properties as "grow houses," JOSEPH LEE LEVINSON and Jotham Walker Pruitt concealed from Countrywide Bank, N.A., SunTrust Bank, N.A., and Washington Mutual Bank, N.A., through its subsidiary Long Beach Mortgage Company, the fact that the houses were intended to be used a marijuana "grow houses."

20. To obtain mortgage financing for the purchase of properties as, "grow houses," Jotham Walker Pruitt falsely

5

represented to Countrywide Bank, N.A., SunTrust Bank, N.A., and Washington Mutual Bank, N.A., through its subsidiary Long Beach Mortgage Company, that income from the sale of illegal narcotics was income from rental properties or legitimate businesses, or from personal income.

21. Each of the "grow houses" was modified to allow efficient growth and subsequent harvesting of marijuana plants. Such modifications physically damaged the houses and reduced their value as residences.

22. From on or about November 1, 2005, continuing up to and including on or about May 28, 2014, the exact dates to the Grand Jurors unknown, in the Counties of Orange and Durham, in the Middle District of North Carolina, and elsewhere, JOSEPH LEE LEVINSON, Jotham Walker Pruitt, and divers other persons, both known and unknown to the Grand Jurors, did knowingly and unlawfully combine, conspire, and agree with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1014 and 1344(2), as to the following objects:

## OBJECTS OF THE CONSPIRACY

a. To knowingly make false statements to several banks, the deposits and accounts of which were then insured by the Federal Deposit Insurance Corporation, including SunTrust Bank, N.A., Countrywide Bank, N.A., and Washington Mutual Bank,

6

N.A., through its subsidiary Long Beach Mortgage Company, for the purpose of inducing the banks to issue mortgage financing for properties in Orange County, North Carolina, which JOSEPH LEE LEVINSON, Jotham Walker Pruitt, and others, knew and intended were to be used as "grow houses" in an illegal drug operation; in violation of Title 18, United States Code, Section 1014; and

b. To obtain money, funds, and property owned and under the custody and control of a financial institution, that is, Countrywide Bank, N.A., SunTrust Bank, N.A., and Washington Mutual Bank, N.A., through its subsidiary Long Beach Mortgage Company, by means of materially false and fraudulent pretenses, representations, and promises to induce and obtain mortgage financing for properties that JOSEPH LEE LEVINSON, Jotham Walker Pruitt, and others, knew would be used for illegal marijuana "grow houses"; in violation of Title 18, United States Code, Sections 1344(2) and 1349.

OVERT ACTS

To accomplish the objects of the conspiracy, JOSEPH LEE LEVINSON, Jotham Walker Pruitt, and others performed and caused to be performed the following overt acts in Orange and Durham Counties, in the Middle District of North Carolina, and elsewhere.

7

23.   On or about December 20, 2005, JOSEPH LEE LEVINSON and Jotham Walker Pruitt prepared and submitted a "Uniform Residential Loan Application" to Washington Mutual Bank, N.A., through its subsidiary Long Beach Mortgage Company, to obtain mortgage financing in the amount of $315,200.00 to purchase a residence at 1414 Laurel Lane, Hillsborough, North Carolina, such application containing material misstatements of fact intended to influence Washington Mutual Bank, N.A., through its subsidiary Long Beach Mortgage Company, to provide mortgage financing, including the false representations that the property would be used for legal purposes and that the property would be used as a residence.

24.   In or about December, 2005, JOSEPH LEE LEVINSON and Jotham Walker Pruitt prepared and submitted a second "Uniform Residential Loan Application" to Washington Mutual Bank, N.A., through its subsidiary Long Beach Mortgage Company, to obtain mortgage financing in the amount of $78,800.00 to purchase a residence at 1414 Laurel Lane, Hillsborough, North Carolina, such application containing material misstatements of fact intended to influence Washington Mutual Bank, N.A., through its subsidiary Long Beach Mortgage Company, to provide mortgage financing, including the false representations that the property would be used for legal purposes and that the property would be used as a residence.

8

25. On or about December 20, 2005, JOSEPH LEE LEVINSON served as the closing attorney for the purchase of the property located at 1414 Laurel Lane, Hillsborough, North Carolina, knowing that the closing documents contained multiple fraudulent and false representations to induce Washington Mutual Bank, N.A., through its subsidiary Long Beach Mortgage Company, to extend mortgage financing, and to conceal the true intention of JOSEPH LEE LEVINSON and others to use the property as a "grow house" in an illegal drug operation.

26. It was a part of the conspiracy that JOSEPH LEE LEVINSON filed or directed employees of his law office to file a warranty deed and two deeds of trust in favor of Washington Mutual Bank, N.A., through its subsidiary Long Beach Mortgage Company, in the office of the Register of Deeds for Orange County, North Carolina, as to the property located at 1414 Laurel Lane, knowing full well that these deeds were part of a mortgage loan transaction induced by materially fraudulent statements, pretenses, and misrepresentations.

27. It was a further part of the conspiracy that, on or about March 14, 2006, JOSEPH LEE LEVINSON and Jotham Walker Pruitt prepared and submitted a "Uniform Residential Loan Application" to SunTrust Bank, N.A., to obtain mortgage financing in the amount of $180,000.00 to purchase a residence at 6557 New Sharon Church Road, Rougemont, North Carolina, such

9

application containing material misstatements of fact intended to influence SunTrust Bank, N.A., to provide mortgage financing, including the false representations that the property would be used for legal purposes and that the property would be used as an investment property.

28. On or about March 14, 2006, JOSEPH LEE LEVINSON and Jotham Walker Pruitt prepared and submitted a second "Uniform Residential Loan Application" to SunTrust Bank, N.A., to obtain further mortgage financing in the amount of $45,000.00 to purchase a residence at 6557 New Sharon Church Road, Rougemont, North Carolina, such application containing material misstatements of fact intended to influence SunTrust Bank, N.A., to provide mortgage financing, including the false representations that the property would be used for legal purposes and that the property would be used as an investment property.

29. On or about March 14, 2006, JOSEPH LEE LEVINSON served as the closing attorney for the purchase of the property located at 6557 New Sharon Church Road, Rougemont, North Carolina, knowing that the closing documents contained multiple fraudulent and false representations to induce SunTrust Bank, N.A., to extend mortgage financing, and to conceal the true intention of JOSEPH LEE LEVINSON and others to use the property as a "grow house" in an illegal drug operation.

10

30.  It was a further part of the conspiracy that on or about March 15, 2006, JOSEPH LEE LEVINSON filed, or directed employees of his law office to file, a warranty deed and two deeds of trust in favor of SunTrust Bank, N.A., as to the property located at 6557 New Sharon Church Road, Rougemont, North Carolina, knowing full well that these deeds were part of a mortgage loan transaction induced by materially fraudulent statements, pretenses, and misrepresentations.

31.  On or about January 1, 2007, JOSEPH LEE LEVINSON gave Jotham Walker Pruitt a sample lease agreement to use as a template in the preparation of fraudulent residential leases to provide to Countrywide Bank, N.A., to falsely induce the bank to extend mortgage financing for the purchase of the 2622 Miller Road property.  JOSEPH LEE LEVINSON counseled Jotham Walker Pruitt to conceal false residential leases for these properties to induce Countrywide Bank, N.A., to provide mortgage funding and to cancel that these properties were being used as "grow houses."

32.  Jotham Walker Pruitt used the lease provided by JOSEPH LEE LEVINSON as a template to produce false and fraudulent leases for 1414 Laurel Lane, 3417 Schley Lane, and 6557 New Sharon Road, to falsely show Countrywide Bank, N.A., that these properties had tenants, that income existed to pay the mortgage

11

loan on 2622 Miller Road, and to conceal the fact that such properties were being used as "grow houses."

33. Jotham Walker Pruitt provided these false leases to Countywide Bank, N.A., with the knowledge, agreement, and consent of JOSEPH LEE LEVINSON for the purpose of influencing the action of the bank by inducing the bank to extend mortgage financing for the purchase of the property at 2622 Miller Road.

All in violation of Title 18, United States Code, Sections 371 and 1349.

## COUNT TWO

1. From on or about December 1, 2005, continuing up to and including, May 16, 2012, the exact dates to the Grand Jurors unknown, in the Counties of Orange and Durham, in the Middle District of North Carolina, JOSEPH LEE LEVINSON, AUBREY MANASSEH PRUITT, DUSTIN GARRETT FISHER, Jotham Walker Pruitt, and divers other persons, both known and unknown to the Grand Jurors, did knowingly conspire and agree with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, as to the following objects:

## OBJECTS OF THE CONSPIRACY

a. To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified

12

unlawful activity, that is, the manufacturing and distribution of marijuana, in violation of Title 21, United States Code, Section 841(a)(1), with the intent to promote the carrying on of specified unlawful activity, that is, the manufacture and distribution of marijuana, in violation of Title 21, United States Code, Section 841(a)(1), and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

b. To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, the manufacturing and distribution of marijuana, in violation of Title 21, United States Code, Section 841(a)(1), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, that is, the manufacturing and distribution of marijuana, in violation of

13

Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 1956(a)(1)(B)(i).

## MANNERS AND MEANS OF THE CONSPIRACY

2.   Paragraphs 1 through 16 of Count One as set forth above are hereby realleged and incorporated by reference as if fully set forth herein.

3.   At all times material herein, Branch Banking and Trust Company was a financial institution within the meaning of Title 18, United States Code, Section 1956(c)(6), and Title 31, United States Code, Section 5312(a)(2), that is, a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and was engaged in interstate commerce and in activities which affected interstate commerce in any way and decree.

4.   At all times material herein, HSBC Bank was a financial institution within the meaning of Title 18, United States Code, Section 1956(c)(6), and Title 31, United States Code, Section 5312(a)(2), that is, a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and was engaged in interstate commerce and in activities which affected interstate commerce in any way and decree.

5.   At all times material herein, State Employees' Credit Union was a financial institution within the meaning of Title 18, United States Code, Section 1956(c)(6), and Title 31, United

14

States Code, Section 5312(a)(2), that is, a bank, the deposits of which were then insured by the National Credit Union Administration, and was engaged in interstate commerce and in activities which affected interstate commerce in any way and decree.

6. At all times material herein, Ramses Investments, LLC, was a limited liability corporation incorporated under the laws of the State of North Carolina. At all times material herein, the finances and business of Ramses Investments, LLC, were controlled by Jotham Walker Pruitt.

7. At all times material herein, Ramses Investments, LLC, operated solely for the purpose of concealing and promoting the drug operation by depositing cash proceeds into the bank accounts of Ramses Investments, LLC, and then using these funds to pay the expenses necessary for the operation and promotion of the "grow houses," including the payment of utility bills, material costs of growing the marijuana, mortgage payments, and real estate taxes due on the "grow houses."

8. At all times material herein, Ramses Investments, LLC, maintained bank accounts at Branch Banking and Trust Company and RBC Bank, which accounts were used to deposit cash proceeds of the drug operation.

9. At all times material herein, Ramses Investment Partners, LLC, maintained bank accounts with Branch Banking and

15

Trust Company and SunTrust Bank, N.A., which accounts were used to deposit cash proceeds of the drug operation.

10.    At all times material herein, Ramses Investment Partners, LLC, operated solely for the purpose of concealing the drug operation by depositing cash proceeds into the bank accounts of Ramses Investment Partners, LLC, and then distributing the proceeds to AUBREY MANASSEH PRUITT, DUSTIN GARRETT FISHER, and Jotham Walker Pruitt as their share of the proceeds of the drug operation.

11.    At all times material herein, AUBREY MANASSEH PRUITT, DUSTIN GARRETT FISHER, and Jotham Walker Pruitt falsely represented that Ramses Investment Partners, LLC, was in the business of operating rental limousines and that any monies drawn from the accounts of Ramses Investment Partners, LLC, were the legally obtained proceeds of such rental limousine business, when in fact, as Jotham Walker Pruitt, AUBREY MANASSEH PRUITT and DUSTIN FISHER then well knew, Ramses Investment Partners, LLC, did not operate a rental limousine business, all monies deposited into its bank account were the proceeds of the drug operation, and that Ramses Investment Partners, LLC, existed for the sole purpose of concealing the proceeds of the drug operation.

12.    From on or about January 1, 2006, continuing up to and including on or about February 1, 2011, the exact dates to the

16

Grand Jurors unknown, in the County of Orange, in the Middle District of North Carolina, AUBREY MANASSEH PRUITT and DUSTIN GARRETT FISHER made use of "grow houses" located at 1414 Laurel Lane, 6557 New Sharon Church Road, 3818 New Sharon Church Road, and 3812 New Sharon Church Road, 2622 Miller Road, and 3417 Schley Road to plant, grow, harvest, produce, manufacture, and distribute marijuana using indoor growing techniques. Access and use of these houses to plant, grow, harvest, produce, manufacture, and distribute marijuana was essential to the operation of the illegal drug operation described in Count One.

13. Each of the "grow houses" described above was purchased and obtained for use in the drug operation by Jotham Walker Pruitt through mortgage financing as alleged in Count One. Payment on the mortgages for the "grow houses" promoted and advanced the success of the drug operation. At all times material herein, failure to make timely mortgage payments on the "grow houses" would hinder, disrupt, and lead to the ultimate failure of the drug operation.

14. JOSEPH LEE LEVINSON recruited M.L. and J.J. as investors in the drug operation. JOSEPH LEE LEVINSON and Jotham Walker Pruitt agreed that M.L. and J.J. would each invest $25,000.00 in the drug operation to cover expenses and the costs of purchasing the "grow houses" and would receive a hundred percent return on their investment from the proceeds of the drug

17

operation. At the direction of JOSEPH LEE LEVINSON, Jotham Walker Pruitt met with M.L. and J.J. in December, 2005, and collected $25,000.00 in cash from each investor. JOSEPH LEE LEVINSON took approximately $10,000.00 of the total investment and converted it to his own use. The remainder of the investment money was used to cover the costs and expenses of the drug operation.

## MANNERS AND MEANS OF THE CONSPIRACY

15. It was a part of the conspiracy that JOSEPH LEE LEVINSON, AUBREY MANASSEH PRUITT, DUSTIN GARRETT FISHER, and Jotham Walker Pruitt agreed that the mortgages on the "grow houses" would be paid using the proceeds of the drug operation.

16. It was a further part of the conspiracy that AUBREY MANASSEH PRUITT and DUSTIN GARRETT FISHER provided Jotham Walker Pruitt with cash proceeds from the sale of marijuana that was grown, produced, and manufactured at the "grow houses" for the purpose of using such cash proceeds to make payments to the financial institutions holding the mortgages on the "grow houses" to pay utility bills on the "grow houses" and other expenses of the drug operation.

17. It was a further part of the conspiracy that AUBREY MANASSEH PRUITT, DUSTIN GARRETT FISHER, and Jotham Walker Pruitt agreed that the bank accounts of Ramses Investment Partners,

18

LLC, and Ramses Investments, LLC, would be used to conceal the nature of the cash proceeds of the drug operation.

18. It was a further part of the conspiracy that Jotham Walker Pruitt deposited the cash proceeds of the drug operation into the bank accounts of Ramses Investment Partners, LLC, and Ramses Investments, LLC, for the purpose of concealing the fact that such funds were the proceeds of an illegal drug operation conducted in violation of Title 21, United States Code, Section 841(a)(1).

19. It was a further part of the conspiracy that, beginning in or about 2006, continuing up to and including on or about December 31, 2010, the exact dates to the Grand Jurors unknown, Jotham Walker Pruitt made the following deposits of cash proceeds of the drug operation into the bank accounts of Ramses Investment Partners, LLC, at branches of Branch Banking and Trust Company and SunTrust Bank, N.A., for the purpose of concealing the nature of the cash proceeds:

        A.   2007 - $110,413.00

        B.   2008 - $448,141.00

        C.   2009 - $251,805.00

        D.   2010 - $178,100.00

20. It was a further part of the conspiracy that Jotham Walker Pruitt made the cash deposits of proceeds from the drug operation into the accounts of Ramses Investment Partners, LLC,

at branches of Branch Banking and Trust Company and SunTrust Bank, N.A., in Durham and Orange counties with the last deposits being made at Branch Banking and Trust Company branches in Durham County on or about December 21, 2010, for $10,000.00, and on or about December 31, 2010, for $700.00.

21. It was a further part of the conspiracy that, beginning in or about 2006, continuing up to and including December 22, 2010, Jotham Walker Pruitt made the following deposits of the cash proceeds of the drug operation into the bank accounts of Ramses Investments, LLC, at branches of Branch Banking and Trust Company, and SunTrust Bank, N.A., for the purpose of concealing the nature of the cash proceeds:

          A.   2006 - $94,890.00

          B.   2007 - $177,761.00

          C.   2008 - $230,711.00

          D.   2009 - $151,000.00

          E.   2010 - $173,800.00

22. It was a further part of the conspiracy that Jotham Walker Pruitt made cash deposits of proceeds from the drug operation into the accounts of Ramses Investments, LLC, at branches of Branch Banking and Trust Company and SunTrust Bank, N.A., in Durham and Orange counties with the last deposits being made at Branch Banking and Trust Company branches in Durham

20

County on or about November 15, 2010, for $13,000.00, and on or about December 22, 2010, for $13,000.00.

23. It was a further part of the conspiracy that beginning in or about January, 2006, continuing up to and including in or about January, 2011, the exact dates to the Grand Jurors unknown, Jotham Walker Pruitt, with the knowledge of AUBREY MANASSEH PRUITT and DUSTIN GARRETT FISHER, made the mortgage payments due on the "grow houses" through the bank account of Ramses Investments, LLC, with cash proceeds of the drug operation which had been deposited into the accounts of Ramses Investments, LLC as follows:

A. Mortgage Payments for 1414 Laurel Lane, Hillsborough, North Carolina, to Washington Mutual Bank, N.A., or its successor, JP Morgan Chase Bank.

B. Mortgage payments for 6557 New Sharon Church Road, Rougemont, North Carolina, to SunTrust Bank, N.A.

C. Mortgage payments for 2622 Miller Road, Hillsborough, North Carolina, to Countrywide Bank, N.A., or its successor, Bank of America, N.A.

D. Mortgage payments for 3417 Schley Road, Hillsborough, North Carolina, to HSBC Bank.

E. Mortgage payments for 3812 New Sharon Church Road and 3818 New Sharon Church Road, Hillsborough, North Carolina, to Branch Banking and Trust Company.

21

24.  It was a further part of the conspiracy that beginning in or about January, 2006, continuing up to and including in or about January, 2011, the exact dates to the Grand Jurors unknown, Jotham Walker Pruitt, with the knowledge of AUBREY MANASSEH PRUITT and DUSTIN GARRETT FISHER, made utility payments, including paying the electric bills, through the bank account of Ramses Investments, LLC, with cash proceeds of the drug operation which had been deposited into the accounts of Ramses Investments, LLC.

25.  It was a further part of the conspiracy that Jotham Walker Pruitt, from in or about January, 2006, continuing up to and including in or about January, 2011, the exact dates to the Grand Jurors unknown, at the direction of and with the knowledge of JOSEPH LEE LEVINSON, made cash payments to investor M.L. from the proceeds of the drug operation in the approximate amount of $50,000.00. These cash payments were for the purpose of repaying M.L.'s investment in the drug operation with the profit agreed upon by JOSEPH LEE LEVINSON and Jotham Walker Pruitt.

26.  It was a further part of the conspiracy that Jotham Walker Pruitt, from in or about January, 2006, continuing up to and including in or about January, 2011, the exact dates to the Grand Jurors unknown, at the direction of and with the knowledge of JOSEPH LEE LEVINSON, made payments in cash and by check to investor J.J. in the approximate amount of $50,000.00.  These

22

payments were for the purpose of repaying J.J.'s investment in the drug operation with the profit agreed upon by JOSEPH LEE LEVINSON and Jotham Walker Pruitt.

27. It was a further part of the conspiracy that Jotham Walker Pruitt deposited cash proceeds from the drug operation into a State Employees' Credit Union account belonging to J.J. for the purpose of repaying J.J.'s investment with the profit agreed upon by JOSEPH LEE LEVINSON and Jotham Walker Pruitt.

28. It was a further part of the conspiracy that Jotham Walker Pruitt travelled from Durham and Orange Counties, North Carolina, to Charleston, South Carolina, to make a payment on the investment of J.J. from the cash proceeds of the drug operation to J.J. Jotham Walker Pruitt made the payment to J.J. at the wedding of J.J.

29. It was a further part of the conspiracy that Jotham Walker Pruitt, from in or about January, 2006, continuing up to and including in or about January, 2011, the exact dates to the Grand Jurors unknown, made cash payments from the cash proceeds of the drug operation to JOSEPH LEE LEVINSON at the request of JOSEPH LEE LEVINSON.

30. It was a further part of the conspiracy that Jotham Walker Pruitt travelled from Durham and Orange Counties to Wake County, North Carolina, to deliver cash from the proceeds of the

23

drug operation to JOSEPH LEE LEVINSON at the home of JOSEPH LEE LEVINSON or at a pre-determined meeting place.

31.   It was a further part of the conspiracy that Jotham Walker   Pruitt   delivered   marijuana   grown,   produced,   and manufactured at the "grow houses" to JOSEPH LEE LEVINSON if cash proceeds from the drug operation were not available at the time that JOSEPH LEE LEVINSON requested Jotham Walker Pruitt provide him with cash from the drug operation.

32.   It was a further part of the conspiracy that, on or about February 28, 2012, DUSTIN GARRETT FISHER, for the purpose of furthering the conspiracy to conceal the proceeds of the drug operation, falsely stated to Special Agents of the IRS-CI that he was a limousine driver for Ramses Investment Partners, LLC, and that Ramses Investment Partners, LLC, was a legitimate limousine business, when in fact, as DUSTIN GARRETT FISHER then well knew, he was not a limousine driver, Ramses Investment Partners, LLC, did not operate a limousine business, and the Ramses Investment Partners, LLC, was formed and operated for the sole purpose of concealing the nature of the cash proceeds for the drug operation.

34.   It was a further part of the conspiracy that, on or about May 16, 2012, JOSEPH LEE LEVINSON, for the purpose of furthering the conspiracy to conceal the proceeds of the drug operation, falsely stated to Special Agents of the IRS-CI that

24

he had no knowledge of any business in which Jotham Walker
Pruitt would receive cash, that he had not provided any cash
payments to Jotham Walker Pruitt, and that he had no knowledge
of the business of AUBREY MANASSEH PRUITT, when in fact, as
JOSEPH LEE LEVINSON then well knew, he was aware that Jotham
Walker Pruitt and AUBREY MANASSEH PRUITT were operating a drug
business involving "grow houses," that he had made an agreement
with M.L. and J.J. to help finance the drug operation, and that
Jotham Walker Pruitt had provided M.L., J.J., and JOSEPH LEE
LEVINSON with cash proceeds from the drug operation.

All in violation of Title 18, United States Code, Section
1956(h).

A TRUE BILL:

_____
FRANK J. CHUT, JR.
ASSISTANT UNITED STATES ATTORNEY

_____
RIPLEY RAND
UNITED STATES ATTORNEY